UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESTCHESTER PUTNAM COUNTIES HEAVY & HIGHWAY LABORERS LOCAL 60 BENEFIT FUNDS, *individually and on behalf of all others similarly situated*,<br><br>                              Plaintiff,<br><br>            -v-<br><br>KYNDRYL HOLDINGS, INC., *et al.*,<br>                              Defendants. | 26-CV-2211 (JPO)<br><br>MEMORANDUM AND ORDER |

J. PAUL OETKEN, District Judge:

Before the Court are competing motions to appoint lead plaintiff and lead counsel under

the procedures set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA")

in a putative securities class action against Kyndryl Holdings, Inc. ("Kyndryl") and its

executives.  For the reasons set forth below, the Court appoints International Union of Operating

Engineers, Local No. 793, Members Pension Benefit Trust of Ontario ("Local 793") as lead

plaintiff and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead

counsel and denies the motions of Indecap Fonder AB, the Oklahoma Police Pension and

Retirement System, and the West Virginia Investment Management Board.

## I.      Background

Plaintiff Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit

Funds ("Local 60"), a union entity responsible for providing pension and other benefits for union

members, commenced this action on March 17, 2026.  (ECF No. 1 ("Compl.") ¶ 20.)  The

complaint alleges that Kyndryl, a global information technology infrastructure services provider,

and its executive officers manipulated and made material misrepresentations about Kyndryl's

free cash flow metrics and internal controls, such that Kyndryl's securities traded at artificially inflated prices during the Class Period, which ran from August 1, 2024 to February 6, 2026. (*Id.* ¶¶ 2, 51, 60, 75.) According to the complaint, Kyndryl's problems first began to emerge on August 4, 2025, when Kyndryl announced the results of its first fiscal quarter of 2026, which underperformed analysts' projections along several metrics. (*Id.* ¶ 7.) In response, the price of Kyndryl common stock fell by about 21%. (*Id.* ¶ 9.) Several months later, on February 9, 2026, Kyndryl filed a Notification of Late Filing with the Securities and Exchange Commission ("SEC"), disclosing that its cash management practices and internal controls were being audited and revealing that it "anticipates reporting material weaknesses in the Company's internal control over financial reporting." (*Id.* ¶ 11.) On the same day, Kyndryl announced the departures of its Chief Financial Officer and General Counsel, stated that its Global Controller would assume a different role in the company, and shared the results of its third fiscal quarter of 2026, which again underperformed analysts' predictions. (*Id.* ¶¶ 12-13.) Kyndryl's common stock fell by more than 54% following these disclosures. (*Id.* ¶ 14.)

This is one of two securities class actions filed against Kyndryl. The first, *Brander v. Kyndryl Holdings, Inc.*, No. 26-CV-782 (E.D.N.Y.), was filed in the Eastern District of New York on February 11, 2026. On the same day, counsel for the plaintiff in the *Brander* action published a notice on *Business Wire* alerting investors to the lawsuit and informing them of the sixty-day deadline—*i.e.*, until April 13, 2026—to seek appointment as lead plaintiff. (*See* ECF No. 15-3.) The same deadline applies to this action. *See Hom v. Vale, S.A.*, No. 15-CV-9539, 2016 WL 880201, at *1 (S.D.N.Y. Mar. 7, 2016) ("[T]he PSLRA requires that notice be published in *only* the first filed action where more than one action is filed 'on behalf of a class asserting substantially the same claim or claims[.]'" (quoting 15 U.S.C. § 78u–4(a)(3)(A)(ii))).

Local 60 seeks to represent a class of all persons who purchased or otherwise acquired Kyndryl securities between August 1, 2024 and February 6, 2026, and were injured by Defendants' alleged misrepresentations.  (Compl. ¶¶ 1, 69.)  In response to the *Business Wire* notice, seven putative class members or groups of putative class members filed motions seeking to be appointed as lead plaintiff.  (ECF No. 13 (motion of Henry Mayer); ECF No. 16 (motion of Indecap Fonder AB and Oklahoma Police Pension and Retirement System); ECF No. 17 (motion of Donatas Petkevicius); ECF No. 22 (motion of Shyam Lal); ECF No. 26 (motion of Muzaffar Tanweer and Robert Preston); ECF No. 30 (motion of Local 793); ECF No. 35 (motion of West Virginia Investment Management Board).)  Donatas Petkevicius, Henry Mayer, and Shyam Lal later withdrew their motions (ECF Nos. 40, 43, 44), and Muzaffar Tanweer and Robert Preston filed a notice of non-opposition, conceding that they "do not have the 'largest financial interest' in this litigation within the meaning of the PSLRA" (ECF No. 46 at 2).  The Court therefore considers only the remaining three competing motions for appointment.

## II.    Legal Standard

Under the PSLRA, the Court is to appoint as lead plaintiff the member or members of the purported class who is or are the "most capable of adequately representing the interests of class members," referred to in the statute as the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) "has either filed the complaint or made a motion in response to a notice"; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.* § 78u-4(a)(3)(B)(iii)(I).  "At this stage of litigation, Rule 23 demands only that a moving plaintiff make a preliminary showing that the adequacy and

3

typicality requirements have been met." *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-CV-4953, 2020 WL 10692524, at *1 (S.D.N.Y. Sept. 24, 2020) (cleaned up).

Once the Court identifies a presumptive lead plaintiff, the presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  "The proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *Batter v. Hecla Mining Co.*, No. 19-CV-05719, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (cleaned up).  "Where there is at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses and will not fairly and adequately protect the interests of the class[,] disqualification is appropriate." *Id.* (quotation marks omitted).

## III.    Discussion

### A.      Presumptive Lead Plaintiffs

The three remaining motions for lead plaintiff are those filed by Indecap Fonder AB ("Indecap") and the Oklahoma Police Pension and Retirement System (together, the "Institutional Investors"), the West Virginia Investment Management Board (the "WVIMB"), and Local 793.

The Institutional Investors are the presumptive lead plaintiffs.  They filed a timely motion to be appointed lead plaintiffs, have the largest financial interest, and have made a preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23.

### 1.    Notice

All putative lead plaintiffs satisfy the first requirement, since each has submitted a timely motion for lead plaintiff status.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### 2.    Financial Interest

"In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at \*5 (N.D. Ill. Aug. 11, 1997)."  *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420, 2020 WL 5548856, at \*4 (S.D.N.Y. Sept. 16, 2020).  Those *Lax* factors include:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*Id.* (quotation marks omitted).  "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant."  *Id.*; *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." (quotation marks omitted)).

The Institutional Investors have the largest financial stake of the three movants:  They sustained approximately $6,455,772 in losses during the Class Period under a "last-in-first-out,"

or "LIFO," calculation[1] (ECF No. 18 at 11), compared to the approximately $4.17 million lost by WVIMB (ECF No. 36 at 5; ECF No. 37-3) and $3.3 million lost by Local 793 (ECF No. 31 at 8; ECF No. 32-2).

### 3.    Rule 23 Requirements

"[A]s part of a PSLRA lead plaintiff motion, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Afr. v. Jianpu Tech. Inc.*, No. 21-CV-1419, 2021 WL 1999467, at *3 (S.D.N.Y. May 19, 2021) (quotation marks omitted). "Movants can demonstrate typicality by showing that their claims arise from the same conduct from which the other class members' claims and injuries arise, and they can demonstrate adequacy if they (1) have no conflict of interest with the other members of the class, (2) have sufficient interest in the outcome of the case, and (3) have selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *May v. Barclays PLC*, No. 23-CV-2583, 2023 WL 5950689, at *5 (S.D.N.Y. Sept. 13, 2023) (cleaned up).

The Institutional Investors have made this preliminary showing. Their claims "arise from the same conduct from which the other class members' claims and injuries arise," *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204, 2019 WL 6617981, at *3 (S.D.N.Y. Dec. 5, 2019) (quotation marks omitted), and they argue, as do the other putative class members, that (1) they purchased Kyndryl securities during the Class Period (2) at prices artificially inflated as a result of Defendants' misconduct, and (3) suffered losses as a result. (ECF No. 18 at 12.) There is no suggestion of any actual or potential conflict of interest between the

---

[1] The Court adopts the parties' losses calculated under the LIFO method. *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011) ("Southern District of New York courts have a very strong preference for the LIFO method in calculating loss.").

Institutional Investors and other class members, they have a significant financial stake in the outcome of the case, and they have proposed as lead counsel Saxena White, a law firm with a strong track record of achieving substantial recoveries on behalf of investor classes.  (*See* ECF No. 18 at 16-18.)  The Court therefore concludes that the Institutional Investors are the presumptive lead plaintiffs in this case.

> **B.      Rebuttal**

This, however, does not end the inquiry.  As noted above, the presumption that a movant should be lead plaintiff "may be rebutted [] upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  As Local 793 and WVIMB both point out, Indecap sold all of its Kyndryl common stock by December 19, 2025—before Kyndryl filed a Notification of Late Filing with the SEC and made the announcements that tipped investors off to its financial troubles on February 9, 2026.  (Compl. ¶¶ 10-13; ECF No. 20-2 at 4.)  This renders Indecap vulnerable to unique defenses compared to other putative lead plaintiffs because, if the February 9, 2026 disclosure is deemed to be the only operative disclosure, Indecap would have no recoverable losses to recoup in the lawsuit.  (ECF No. 49 at 7.)

Indecap retorts that the complaint has adequately pleaded that Kyndryl's statements on August 4, 2025, which revealed that the company had underperformed along some metrics in the first fiscal quarter of 2026, serve as a partial corrective disclosure, and so Indecap's recoverable losses accrued from that day until it sold its Kyndryl shares on December 19, 2025.  (Compl. ¶ 7; ECF No. 53 at 10.)  But this is belied by the complaint itself, which describes the August 4, 2025 statements as "materially false and/or misleading" (Compl. ¶ 60), and therefore part of the

alleged ongoing fraud, rather than a partial corrective disclosure that alerted investors to Kyndryl's potential misconduct. *Cf. In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) ("Plaintiffs cannot have it both ways. They cannot allege that Defendants made certain misstatements, namely, that [Defendant] was doing well compared to its competitors, and simultaneously argue that the misstatement itself constituted a corrective disclosure[.]"). In any event, the Court need not determine at this juncture whether the August 4, 2025 statements served as a partial corrective disclosure. All that is required to disqualify a putative class leader is "a *potential* that the presumptively most adequate lead plaintiff will be subject to unique defenses." *Batter*, 2020 WL 1444934, at *7 (emphasis added and quotation marks omitted). "This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions." *In re Hebron Tech.*, 2020 WL 5548856, at *7 (quotation marks omitted).

The Court concludes that Indecap's disposal of all of its Kyndryl common stock before the February 9, 2026 disclosure renders it atypical and thus precludes it from serving as lead plaintiff for the class. "[Indecap's] claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that [Kyndryl's] alleged fraud was apparent, and caused shareholder losses, well before the [February 9, 2026 disclosures]." *Lee v. iQIYI, Inc.*, No. 20-CV-1830, 2020 WL 6146862, at *2 (E.D.N.Y. Oct. 20, 2020). As other courts in this circuit have determined on analogous facts, this "may subject [Indecap] to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their [Kyndryl] shares earlier." *Id.* (disqualifying a putative leader of the class because it had sold all of its stock before the primary corrective disclosure); *see also Jiang v. Chirico*, No. 23-CV-1258,

8

2024 WL 967084, at *9 n.7 (S.D.N.Y. Mar. 5, 2024) (same); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (same).[2]

Absent Indecap, the Oklahoma Police Pension and Retirement System has sustained $735,400.07 in losses during the Class Period.  (ECF No. 20-3 at 5.)  Because this loss amount is eclipsed by Local 793 and WVIMB's respective losses, the Institutional Investors are disqualified as lead plaintiffs in this action.  *Cf. Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (disqualifying joint movants where, absent one movant, the other "no longer ha[d] the largest financial interest in this action").[3]

### C.    WVIMB

The movant with the next-largest LIFO loss is WVIMB at approximately $4.17 million.  (ECF No. 37-3 at 3.)  The Institutional Investors and Local 793, however, contend that WVIMB should be precluded from serving as lead plaintiff because it "is a net gainer in Kyndryl stock during the Class Period and, as a result, is atypical of other members of the Class."  (ECF No. 49 at 19; *see also* ECF No. 51 at 14.)  Specifically, although WVIMB spent approximately $14.5 million purchasing Kyndryl common stock during the Class Period, its Certification shows that it received more than that amount—approximately $14.9 million—in proceeds from its Class Period sales of Kyndryl stock at inflated prices.  (ECF No. 49 at 19; ECF No. 37-2; ECF No. 52-

---

[2] The fact that the complaint in the other related class action currently pending against Kyndryl, *Brander v. Kyndryl Holdings, Inc.*, No. 26-CV-782 (E.D.N.Y.), does not even mention the August 4, 2025 statements as relevant misrepresentations or disclosures also weighs against Indecap.  (*See generally* ECF No. 20-1.)  This Court has previously observed that, were a putative lead plaintiff to rely exclusively on disclosures that predated those at issue in a related case—as is the posture here—"the Court might have concerns about [its] adequacy to serve as lead plaintiff."  *Glavan v. Revolution Lighting Techs., Inc.*, No. 19-CV-2308, 2019 WL 3406582, at *5 n.8 (S.D.N.Y. July 29, 2019).

[3] Because the Court concludes that the Institutional Investors are ineligible to serve as lead plaintiffs due to Indecap's disposal of all of its Kyndryl holdings before February 9, 2026, it does not reach WVIMB's arguments about Indecap's standing.  (*See* ECF No. 47 at 11-17.)

1 at 3.)  Those $14.9 million in proceeds, which are derived from common stock that WVIMB held at the beginning of the Class Period, were properly excluded under a LIFO loss analysis as "opening balance" shares, but are nonetheless relevant for purposes of assessing whether WVIMB is subject to unique defenses.  (*See* ECF No. 51 at 16, 18.)  *See Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) ("LIFO losses are completely irrelevant to the net gainer analysis," as "'[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud'" (quoting *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011))).

The Court is persuaded that WVIMB's status as a "net gainer" renders it atypical, thereby disqualifying it from representing the class.  "Courts regularly hold that plaintiffs who are net sellers and/or net gainers may be subject to unique defenses because they may have benefitted by selling pre-Class Period shares at allegedly inflated prices during the Class Period."  *Doshi v. Gen. Cable*, No. 21-CV-7025, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) (collecting cases); *see also In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages.").  Unlike the other putative lead plaintiffs, WVIMB arguably benefited from Defendants' fraud by selling Kyndryl stock at inflated prices during the Class Period for a nearly $400,000 profit, which subjects it to unique defenses as to damages. (*See* ECF No. 52-1 at 3.)  *See In re Refco Inc. Sec. Litig.*, No. 08-CV-3065, 2013 WL 4078410, at *2 (S.D.N.Y. Aug. 2, 2013) ("As a general rule, plaintiffs cannot claim damages where the same fraud alleged to be the cause of a loss also permitted a countervailing gain.").

WVIMB argues in response that the case law is in fact narrower than the competing movants suggest, and cautions against appointing only movants who are *both* "net gainers" *and* "net sellers," or parties who sell more shares than they bought during the Class Period. (ECF No. 56 at 8.) WVIMB contends that it is not a net seller because it purchased more shares than it sold during the Class Period, and that it is not a net gainer because, under the PSLRA, 15 U.S.C. §78u-4(e)(1), and *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), any loss calculation must account for what the plaintiff paid for the security, rather than simply totaling profits and losses over the Class Period and focusing on the difference, as other courts have done. (*Id.* at 8-11.) *See, e.g.*, *Perlmutter*, 2011 WL 566814, at *9 (stating that total net expenditures are "calculated by looking at the total cash outlays on [Defendant's] stock during the Class Period and subtracting any cash receipts during the same period"); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23-CV-1769, 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023) (defining a "net gainer" as someone who "earned more proceeds than it spent during the Class Period"). Under the PSLRA and *Dura* methodologies, WVIMB argues, it has demonstrated a substantial recoverable loss. (ECF No. 56 at 9-11.)

This argument, however, goes to the particulars of and differences between various loss calculation methodologies, and foreshadows precisely the kind of squabbles about damages that would "divert attention from the substance of the basic claim" should WVIMB be appointed lead plaintiff. *In re Hebron Tech.*, 2020 WL 5548856, at *7 (quotation marks omitted). Whether WVIMB should be considered a net gainer by some calculations or a net loser by others is also a damages question that, of the putative class leaders, snags only WVIMB. This weighs against its appointment as class plaintiff. Moreover, though WVIMB is correct that the relevant case law largely cautions against appointing net gainers who are *also* net sellers, this does not immunize

from unique defenses net gainers who are *not* net sellers. The fact that WVIMB sold fewer shares than it purchased during the Class Period—and was therefore not a net seller—does not alter the fact that, by certain calculations, it profited from the sale of Kyndryl stock at allegedly inflated prices during that same timeframe.

At base, "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud." *Perlmutter*, 2011 WL 566814, at *9. Here, as in *Perlmutter*, WVIMB "purchased [Kyndryl] stock prior to the Class Period . . . at fair market value" and then "sold it during the Class Period . . . at fraudulently inflated prices." *Id.* "As a result, instead of being injured by the fraud on these sales," there is a plausible argument that WVIMB "actually benefitted from the fraud." *Id.* Because this subjects WVIMB to unique defenses related to damages, the Court declines to appoint WVIMB lead plaintiff.

### D.    Local 793

That leaves only one putative class leader: Local 793. The sole challenge to Local 793 is levied by the Institutional Investors, who contend that Local 793 is atypical because it purchased nearly 80% of its Kyndryl common stock after the purported partial corrective disclosures on August 4, 2025. (ECF No. 51 at 20-21; *see* ECF No. 52-8.) As previously discussed, however, it is unclear whether the August 4, 2025 statements are properly pleaded as a partial corrective disclosure. Nor were Defendants' statements on August 4, 2025—which revealed only that Kyndryl had underperformed by some analysts' projections and which said nothing about Kyndryl's deficient cash management practices or internal controls—so obviously corrective that they indicate Local 793 purchased most of its Kyndryl shares *regardless* of the Defendants' purported misrepresentations, as the Institutional Investors suggest. (ECF No. 51 at 23.)

12

Even assuming *arguendo* that Defendants' August 4, 2025 statements qualify as a partial corrective disclosure, the Institutional Investors would not succeed on this objection.  Courts have consistently declined to disqualify a putative lead plaintiff for making stock purchases after a partial corrective disclosure, particularly where that partial disclosure may not have made class members "actually aware of the fraud."  *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (declining to disqualify putative lead plaintiff who first purchased the defendant's stocks after a partial corrective disclosure); *see also Goldenberg v. NeoGenomics, Inc.*, No. 22-CV-10314, 2023 WL 6389101, at *5 (S.D.N.Y. Oct. 2, 2023) (same); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (same).  Defendants' August 4, 2025 statements were not "as a matter of law necessarily sufficient to counter-balance effectively [their] previous misleading statements."  *In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015, at *3 (quotation marks omitted).  And unlike the putative lead plaintiffs in those cases, who first purchased the defendant's stock after a partial corrective disclosure—thus rendering them potentially atypical compared to other class members—Local 793 held a substantial amount of Kyndryl stock for the entire duration of the Class Period.

For these reasons, the Institutional Investors' objection is unavailing.  Local 793 has filed a timely motion in response to the *Business Wire* notice, has the next largest financial stake in the case following the disqualifications of the Institutional Investors and WVIMB, and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Local 793 asserts the same claims as other class members, has no actual or potential conflict of interest with other class members, has a significant stake in the outcome of

the class action, and has, as discussed below, selected a highly qualified law firm to serve as lead counsel.

Accordingly, the Court appoints Local 793 as lead plaintiff.

## IV.     Appointment of Lead Counsel

Under the PSLRA, the lead plaintiff is entitled, "subject to the approval of the court, [to] select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Local 793, which the Court has now appointed lead plaintiff, has chosen Bernstein Litowitz to serve as lead counsel. (ECF No. 31 at 11.) Bernstein Litowitz has extensive experience in securities class actions (*see id.*), and no class member has offered any reason why the firm would be ill-equipped to act as lead counsel in this action. This Court therefore concludes, as have other courts in this District, that Bernstein Litowitz is "well-qualified to serve as lead counsel." *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 08-CV-8060, 2009 WL 10467937, at *5 (S.D.N.Y. Aug. 26, 2009).

## V.     Conclusion

For the foregoing reasons, the Court appoints International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario as lead plaintiff and Bernstein Litowitz as lead counsel. The parties are directed to confer and jointly file a proposed schedule for the filing of any amended complaint and briefing schedule for any motion to dismiss within fourteen days of the date of publication of this Memorandum and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 13, 16, 17, 22, 26, 30, and 35.

SO ORDERED.

Dated: May 12, 2026
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

14